[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-12649
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 22, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00347-CR-T-24-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PATRICK NEAL GILLESPIE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 22, 2006)

**ON REMAND FROM THE SUPREME COURT
OF THE UNITED STATES**

Before TJOFLAT, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

The appeal of Patrick Neal Gillespie ("Gillespie") is again before us,

pursuant to a remand from the Supreme Court of the United States for further consideration in light of United States v. Booker, 125 S. Ct. 783 (2005). See Gillespie v. United States, 126 S. Ct. 276 (2005). We previously affirmed Gillespie's conviction and twelve-month sentence for willful failure to pay interstate child support, in violation of 18 U.S.C. § 228(a)(3). United States v. Gillespie, 127 Fed. Appx. 472 (11th Cir. 2005).

Because Gillespie raised a Booker-type claim in his initial brief on appeal, but raised no such claim before the district court, we can review his sentence only for plain error. Moreover, because the record indicates that Gillespie cannot demonstrate a reasonable probability of a different result under the post-Booker advisory guidelines system, we again affirm Gillespie's sentence and reinstate in part our prior opinion.

## BACKGROUND

Gillespie pled guilty to one count of failure to pay interstate child support obligations in excess of $10,000.00, in violation of 18 U.S.C. § 228(a)(3). During his plea hearing, the government established the factual basis for the plea, detailing Gillespie's failure to pay child support orders from Florida and Ohio courts over the course of several years. As part of this factual basis, the government stated that as of February 28, 2003, state court records indicated that Gillespie was

2

$31,158.03[1] in arrears on his child support obligations. The district court specifically asked both Gillespie and his counsel whether they had any objections or corrections to the facts recited by the government. Both responded in the negative.[2]

Pursuant to sections 2B1.1 and 2J1.1 of the Guidelines, the Pre-sentence Investigation Report ("PSI") calculated a base offense level of six. Based upon a $33,197.97 loss resulting from the offense, the PSI added an additional six offense levels. See U.S.S.G. § 2B1.1(b)(1)(D). The PSI further added two offense levels because the offense involved violation of a prior specific judicial order. See U.S.S.G. § 2B1.1(b)(7). After a downward adjustment for acceptance of responsibility under § 3E1.1(b), the total offense level stood at 12. When combined with Gillespie's criminal history category (IV), the PSI indicated that the guidelines imprisonment range was 21 to 24 months.

Gillespie filed several objections to the PSI based upon: (1) the PSI's calculation of the start date for the offense conduct; and (2) the PSI's inclusion of a

---

[1]Because of payments made between the time of Gillespie's plea and the date of his sentencing, the loss amount at the time of sentencing was reduced to $29,236.81.

[2]As discussed in our prior opinion in this case, the district court's Rule 11 colloquy technically failed to apprise Gillespie of the district court's obligations to apply the sentencing guidelines. However, as we previously held, Gillespie failed to object on this basis before the district court and cannot show that the error affected his substantial rights. The Supreme Court's Booker remand does not affect our prior disposition of this Rule 11 issue.

D.U.I. offense in the criminal history computation. Gillespie's objections also requested a downward departure based upon over-representation of criminal history, under U.S.S.G. § 4A1.3. These objections did not raise the role of the judge as a fact-finder, Gillespie's right to jury determination of disputed facts beyond a reasonable doubt, or any case in the line of Apprendi v. New Jersey, 530 U.S. 466 (2000). Moreover, Gillespie's objections did not raise any factual disputes.

At sentencing, Gillespie withdrew his objection related to the D.U.I. offense scoring. The district court then overruled his objections concerning the appropriate start date for the offense conduct, and adopted the PSI's criminal history categorization. While stating that the "over representation of the criminal history is a little more troubling to me and a little closer call", the district court ultimately declined to depart downward. The district court accepted the PSI's guideline calculation and factual basis, ultimately sentencing Gillespie to 21 months' imprisonment – a sentence at the low end of the guideline range.

Gillespie timely appealed. In his initial brief on appeal, Gillespie argued that his Fifth and Sixth Amendment rights were violated when the district court enhanced his sentence based on both his prior convictions and the child-support amount, where neither of those facts were proven to a jury beyond a reasonable

4

doubt. Gillespie's arguments in this regard were predicated on <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). Relying on then-binding Circuit precedent, we rejected Gillespie's sentencing arguments, holding that <u>Blakely</u> did not affect the federal sentencing guidelines. <u>Gillespie</u>, 127 Fed. Appx. 472. Gillespie then filed a petition for a writ of certiorari with the Supreme Court. The Supreme Court granted that petition, vacating our opinion and remanding the case for further consideration in light of <u>Booker</u>. <u>Gillespie</u>, 126 S. Ct. 276.

### STANDARD OF REVIEW

Though Gillespie raised sentencing objections before the district court, none of those objections implicated the role of the judge as fact-finder, Gillespie's jury trial rights, or issues which could reasonably be construed as a <u>Booker</u>-type claim. <u>See</u> <u>United States v. Dowling</u>, 403 F.3d 1242, 1246 (11th Cir. 2005) (holding that appellant's non-constitutional sentencing objection failed to preserve <u>Booker</u> error, where the objection made no reference to the Sixth Amendment, the role of judge as fact-finder, the right to jury determination of disputed facts, or the <u>Apprendi</u> line of cases).

However, because Gillespie did explicitly raise a claim based on <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) in his initial brief on appeal, we review his sentence for plain error. <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1297 (11th

5

Cir. 2005). Under plain error review, appellate courts have a limited power to correct errors that were not timely raised in the district court. United States v. Olano, 507 U.S. 725, 731 (1993). We may not correct such an error unless: (i) there is error; (ii) it is plain; and (iii) it affects substantial rights. Id. If these three conditions are met, we may exercise our discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id.

## DISCUSSION

Following Booker, a defendant's Sixth Amendment rights are violated when his sentence is enhanced under a mandatory guidelines system based upon any fact (other than a prior conviction) that is neither admitted nor proven to a jury beyond a reasonable doubt. Booker, 125 S. Ct. at 756. Furthermore, a defendant's non-constitutional rights are violated where he is sentenced under the mandatory guidelines system that Booker has rendered advisory, even in the absence of constitutional Booker error. United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

The sentence imposed here does not implicate Gillespie's Sixth Amendment rights because both Gillespie and his counsel indicated that they had no corrections or objections to the loss amount as stated by the government. Accordingly, the

district court's reliance on that loss amount in determining Gillespie's sentence does not constitute constitutional <u>Booker</u> error. <u>United States v. Burge</u>, 407 F.3d 1183, 1191-92 (11th Cir. 2005) (where defendant admitted the facts contained in the PSI, there was no Sixth Amendment <u>Booker</u> error). However, because the district court sentenced Gillespie under the mandatory guidelines scheme, his sentence does contain statutory <u>Booker</u> error. <u>Shelton</u>, 400 F.3d at 1330-31. That error is now plain. <u>Id.</u> at 1331.

However, it does not appear that under the third prong of the plain-error test, Gillespie's substantial rights have been affected. The third prong of plain error review requires the defendant to demonstrate a reasonable probability of a different result under the advisory guidelines system. <u>Id.</u> Where the effect of the error is indeterminate or if we would be left to speculate, that burden has not been satisfied. <u>Id.</u> at 1301. Similarly, the fact that the district court imposed a sentence at the low end of the guidelines range, standing alone, does not satisfy this burden. <u>United States v. Fields</u>, 408 F.3d 1356, 1361 (11th Cir. 2005).

After a close review of the record, we conclude that Gillespie has not shown a reasonable probability of a lower sentence under the post-<u>Booker</u> advisory sentencing system. While Gillespie focuses on the district court's comment that it "could go either way" on his motion for a downward departure, this statement at

7

best leaves us to speculate as to the effect that the mandatory nature of the guidelines had on Gillespie's sentence. Moreover, the fact that the district court sentenced Gillespie at the low end of the guidelines range does not alone satisfy the third prong of plain error review. Fields, 408 F.3d at 1361. As such, Gillespie has failed to demonstrate that the Booker error affected his substantial rights. See United States v. Cartwright, 413 F.3d 1295, 1301 (11th Cir. 2005).

Accordingly, we reinstate our prior opinion with the exception of our discussion concerning Blakely's application to the Guidelines, for which we substitute the foregoing.

**OPINION REINSTATED IN PART; AFFIRMED.**

TJOFLAT, Circuit Judge, specially concurring:

I concur in the court's judgment because Gillespie failed to satisfy the third prong of the plain-error test as that test is articulated in our precedent, e.g., United States v. Shelton, 400 F.3d 1325, 1332 (11th Cir. 2005). That is, Gillespie has not demonstrated "a reasonable probability of a different result under the advisory guidelines system," as Shelton requires. Ante at ___. Shelton acknowledges that "it will be difficult for a defendant to establish the third prong in Booker-error cases." 400 F.3d at 1332 n. 8. What the defendant must do to establish the third prong is point to something the district court said at the sentencing hearing – specifically, statements indicating that were the Guidelines advisory rather than mandatory, the court would impose a lesser sentence. The court made such statements in Shelton, including a statement that a sentence at the bottom of the Guidelines sentence range was "'more than appropriate." Id. at 1332. "All of [the district court's] comments taken together convinced [this court] that there is a reasonable probability that the district court would have imposed a lesser sentence in Shelton's case if it had not felt bound by the Guidelines." Id. at 1332-33.

In United States v. Thompson, I referred to our search for the sort of statements that satisfied the third prong in Shelton as a search for "magic words." 422 F.3d 1285, 1302 (11th Cir. 2005) (Tjoflat, J. specially concurring). I then said

9

that a district judge who makes the sort of statements – uses the magic words – we look for is in a very real sense "foster[ing] disrespect for the rule of law." Id. at 1304. That is, in addition to telling the defendant that it is dissatisfied with the punishment the Congress has provided, a punishment the court is bound by its oath of office to impose, the district court is encouraging the defendant to "persist in attacking his sentence on direct appeal and collateral review, notwithstanding that its substance and the manner of its imposition are legally correct. After all, why should the defendant not appeal a sentence that even the judge criticized as too severe?" Id. at 1303-04. Under our third-prong test, "[a] defendant is rewarded with a new sentencing hearing only if the sentencing judge took the entirely inappropriate step of publically criticizing the law that required him to impose the sentence. In contrast, a defendant whose sentence was imposed without gratuitous comment by the sentencing judge is denied a new hearing." Id. at 1305. As I observed in Thompson, having defense counsel and the U.S. Attorney quibbling over whether the sentencing judges's words are magical enough to warrant a new sentencing hearing "is as arbitrary as it is absurd." Id.