[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11463
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 3, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00411-CR-T-26-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALPHONSO GEORGE LAWRENCE,
a.k.a. Anthony Townsend,
a.k.a. James G. Parrish,
a.k.a. Paul Greg Reed,
a.k.a. Randall Smith,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 3, 2010)

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Alphonso George Lawrence appeals his sentence of 60 months of imprisonment following his plea of guilty to reentering the United States illegally after conviction of an aggravated felony. 8 U.S.C. §§ 1326(a), (b)(2). Lawrence argues that his sentence is unreasonable, and the government renews its argument that Lawrence's appeal is barred by the waiver in his plea agreement. We affirm.

Lawrence entered an agreement to plead guilty to reentering the United States illegally in exchange for three recommendations by the government that Lawrence receive a sentence within the "applicable guidelines range as determined by the Court"; a two-level downward adjustment for his acceptance of responsibility, United States Sentencing Guideline § 3E1.1(a) (Nov. 2007); and a four-level downward departure for his participation in the Fast Track Prosecution Program, id. § 5K3.1. "In consideration for participation in the Fast Track Program," Lawrence agreed to waive the right to "directly appeal" or "collaterally challenge" his "conviction, sentence, and any aspect of or matter relating to the prosecution."

At his change of plea hearing, Lawrence affirmed that he "under[stood] the significance of [the] proceeding and how it affect[ed]" him; he had reviewed and discussed with counsel "in detail each and every term of [the] agreement and how

2

it affect[ed]" him; and he had agreed to "each and every term and provision of [the] agreement." Lawrence acknowledged that he could not withdraw his plea of guilt if the district court rejected the recommendations of the government to reduce Lawrence's base offense level, calculated the sentencing range differently from defense counsel, or imposed a sentence above the advisory guideline range. The district court asked Lawrence if he understood what rights he relinquished to participate in the fast track program, which included the right to appeal or challenge collaterally his sentence, and Lawrence responded affirmatively. The district court later accepted Lawrence's plea of guilty.

The presentence investigation report provided a base offense level of 8, U.S.S.G. § 2L1.2(a), increased that level by eight points because Lawrence had been deported or remained unlawfully in the United States after conviction of an aggravated felony, id. § 2L1.2(b)(1)(C), and then decreased that level by three points for Lawrence's acceptance of responsibility, id. § 3E1.1. Based on a criminal history of III, the report provided a sentencing range between 18 and 24 months of imprisonment. The report stated that Lawrence might qualify for an upward departure based on his criminal history. Id. § 4A1.3.

The presentence report listed Lawrence's 14 aliases and detailed his extensive encounters with federal and state authorities. The report stated that

3

Lawrence had been deported from the United States in 1986, after he attempted to enter the country using an altered passport, and again in 1990 and 2003, after he was convicted of reentering the United States illegally. The report provided Lawrence's extensive criminal history, which included an arrest in 1987 for traffic offenses; convictions in 1987 and 1988 for loitering, unlawful use of a license, and carrying a concealed firearm; a charge in 1989 that he had stabbed an inmate in the back with a screwdriver; an arrest in 1989 for attempting to bribe an employee of the Florida Department of Motor Vehicles to issue a fraudulent driver's license; an arrest in 2002 for grand theft auto; and an arrest in 2007 for being a felon in possession of a firearm. The report also mentioned two other criminal incidents involving Lawrence: a traffic stop in 1998 for speeding, from which Lawrence had been released after he represented that he was a legal resident; and an arrest in 2007 for charges of attempted first degree murder, aggravated battery, and shooting into a vehicle, which had been nol prossed.

Lawrence objected to the report and argued that the district court should not consider his uncharged misconduct. At the sentencing hearing, the district court overruled Lawrence's objection. The government moved for Lawrence to receive a four-point downward departure for his participation in the fast track program and stated that the request was made in exchange for Lawrence "giv[ing] up all right[s]

4

to appeal." After an extensive discussion about the effect of denying the downward departure, the district court found that Lawrence was "technically eligible" for the departure. The district court calculated Lawrence's total offense level at 9, which provided a sentencing range between 8 and 14 months of imprisonment.

The district court recited Lawrence's extensive background and concluded that a sentence within the Sentencing Guidelines would not be reasonable. The district court described Lawrence's criminal history as "horrendous" and decided to vary upward from the sentencing range based on the sentencing factors, 18 U.S.C. § 3553(a). The district court stated that it could not "justify" sentencing Lawrence to 14 months of imprisonment when the court had sentenced another defendant, who had not been eligible for the fast track program, to 46 months for reentering the United States illegally and that defendant was "citizen of the year . . . compared to" Lawrence. The district court stated that the sentencing factors, 18 U.S.C. § 3553, and in particular "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense and to afford adequate deterrence to criminal conduct, . . . reasonably justif[ied] an upward variance." The district court sentenced Lawrence to 60 months of imprisonment and 3 years of supervised release.

Lawrence appealed and argued that he did not waive his right to appeal his sentence knowingly and voluntarily. The government moved to dismiss the appeal. We denied the motion summarily and instructed the government "to file a brief on the merits." The government again argues in its brief that the appeal waiver bars Lawrence from challenging his sentence, but we need not revisit this issue because Lawrence's argument is meritless in any event.

Lawrence argues that his sentence is unreasonable because the district court varied upward based "entirely" on its implicit disagreement with the disparity between the sentencing range provided for Lawrence under the fast track program and the sentence imposed on another offender who was not eligible for the program, but we disagree. The district court explained that its decision to vary upward was based on Lawrence's "history and characteristics," which were so "horrendous" "that the advisory guideline range just [did] not fix the parameters of what [the court] would consider to be a reasonable sentence." The district court correctly calculated the advisory guideline range of 8 to 14 months, but the district court reasonably determined that the sentencing range did not adequately reflect Lawrence's extensive criminal history. See United States v. Shaw, 560 F.3d 1230, 1237–40 (11th Cir. 2009). The district court determined that a sentence of 60 months of imprisonment was necessary to deter Lawrence from future similar

crimes, protect the public against those potential crimes, and provide a just punishment. See 18 U.S.C. §§ 3553(a), (c); United States v. Livesay, 525 F.3d 1081, 1090 (11th Cir. 2008) (discussing Gall v. United States, 552 U.S. 38, 128 S. Ct. 586 (2007), and Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456 (2007)). Lawrence has illegally reentered the United States three times since his first deportation and each time has committed additional crimes. See United States v. Burge, 407 F.3d 1183, 1188 (11th Cir. 2005) ("'The sentencing factor at issue here—recidivism—is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.'" (quoting Almendarez-Torres v. United States, 523 U.S. 224, 243, 118 S. Ct. 1219, 1230 (1998)). The district court did not abuse its discretion by sentencing Lawrence to a term of imprisonment of 60 months.

We **AFFIRM** Lawrence's sentence.